IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALIAH K., by and through her guardian, LORETTA M.,<br><br>       Plaintiffs,<br><br>  vs.<br><br>STATE OF HAWAI`I, DEPARTMENT OF EDUCATION,<br><br>       Defendants. | CIVIL NO. 10-00447 LEK-KSC |

**ORDER DENYING PLAINTIFFS' MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

On March 17, 2011, Plaintiffs Aliah K., by and through her legal guardian, Loretta M. (collectively "Plaintiffs"), filed a Motion for Temporary Restraining Order ("Motion"). The Court construes the Motion as seeking both a temporary restraining order ("TRO") and a preliminary injunction. Defendant State of Hawai`i Department of Education ("Defendant" or "DOE") filed its memorandum in opposition on March 28, 2011, and a supplemental memorandum in opposition pursuant to court order on April 12, 2011. Plaintiffs filed their reply on April 12, 2011. This matter came on for hearing on April 18, 2011. Appearing on behalf of Plaintiffs was Carl Varady, Esq., and appearing on behalf of Defendant was Gary Suganuma, Esq. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Plaintiffs' Motion is HEREBY DENIED WITHOUT PREJUDICE because Plaintiffs have not shown that the

threat of irreparable harm is actual and imminent, and as set forth more fully below.

**BACKGROUND**

Aliah K. is a disabled minor who has been diagnosed as having autism. She is eligible to receive special education and related services under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. § 1401 et seq. [Complaint at ¶ 3.] Aliah K. attends Loveland Academy, LLP ("Loveland"), a private school that provides special education and mental health services on a day-treatment basis to students who are eligible for such services under the IDEA. [Id. at ¶¶ 6, 13.] According to the Complaint, the DOE does not currently have a day treatment facility providing comparable services to those that Loveland provides. [Id. at ¶ 7.]

The Complaint alleges that Aliah K. is receiving services at Loveland pursuant to a settlement agreement with the DOE, but that the DOE has not paid amounts due to Loveland for services provided to Aliah K. pursuant to the settlement agreement. [Id. at ¶¶ 13-15.] Plaintiffs allege that the DOE's refusal to pay Loveland had undermined the settlement agreement and constitutes a unilateral alteration of Aliah K.'s special education services and related services, depriving her of a free appropriate public education ("FAPE"), in violation of the IDEA. [Id. at ¶¶ 16, 18-19.] Plaintiffs also allege that, by denying

2

Aliah K. meaningful access to public education, Defendant has violated Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and its implementing regulations. [Id. at ¶ 25.] Plaintiffs further allege that Defendant violated Section 504 by retaliating against Loretta M. because of her advocacy for Aliah K.'s services. Plaintiffs allege that Loretta M. has suffered economic, psychological, and physical harm as a result. [Id. at ¶ 28.]

The Complaint expressly alleges the following claims: enforcement of the settlement agreement pursuant to 20 U.S.C. § 1415(f)(1)(B)(iii) ("Count One"); and a claim for violation of Section 504 ("Count Two"). Plaintiffs seek: a declaration that Defendant's actions are unlawful; an order requiring Defendant to pay for the outstanding costs of the services that Loveland has provided to Aliah K.; general and special damages; attorneys' fees and costs; and any other appropriate relief.

## I.    Plaintiffs' Motion

At the outset, the instant Motion notes the significant history of related litigation behind the instant case.

### A.    Loveland, Civil. No. 02-00693

Aliah K. was one of the students whose parents sued the State of Hawai`i ("the State"), and others, in Loveland Academy, LLC, et al. v. Hamamoto, et al., CV 02-00693 HG-LEK ("Loveland"), for declaratory and injunctive relief requiring the State to pay

Loveland for services provided. The Loveland parties entered into a Release and Settlement Agreement ("Loveland Settlement Agreement") on June 4, 2004.[1] Aliah K. is one of the students covered by that agreement. [Loveland Settlement Agreement at 1.] As part of the Loveland Settlement Agreement, the parties agreed to have the district judge appoint a special master to complete an accounting of the amounts owed to Loveland and to have the special master submit the accounting to the district judge for her review and adoption. [Id. at 3.] The special master submitted a report dated November 30, 2007, which was filed under seal on December 10, 2007.

The district judge adopted the report with two exceptions and ultimately found that Loveland was entitled to receive a total of $8,399,881.44 and that the State had underpaid Loveland by $136,707.84. [Loveland, Order Adopting in Part, Rejecting in Part, & Modifying in Part, Special Master's Nov. 30, 2007 Report & Recommendation, filed 3/14/08 (dkt. no. 100).] The period addressed in the Loveland Settlement Agreement and the special master's report was July 1, 2002 to June 30, 2005. [Loveland Settlement Agreement at 2; Loveland, Status Report Order, filed 12/10/07 (dkt. no. 98 (sealed)) at 4.]

## B.    L.M., Civil. No. 05-00345

---

[1] The Loveland Settlement Agreement is attached to the instant Motion as Exhibit 3 to the Declaration of Carl M. Varady ("Varady Declaration").

During the pendency of <u>Loveland</u>, Plaintiffs filed <u>L.M.,</u>
<u>et al. v. Department of Education, State of Hawaii</u>, CV 05-00345
ACK-KSC ("<u>L.M.</u>").  <u>L.M.</u> arose from Aliah K.'s 2004-2005
individualized education program ("IEP"), which called for her to
transition from her then-current placement at Loveland to her
then-home school, Salt Lake Elementary School.  On November 5,
2004, Plaintiffs filed a Request for Impartial Hearing with the
DOE, arguing that the 2004-2005 IEP, formulated at a May 6, 2004
team meeting, did not offer a FAPE.  [<u>L.M.</u>, Order Affirming in
Part & Remanding in Part the Hearing Officer's Admin. Decision,
filed 8/9/2006 (dkt. no. 49) ("<u>L.M.</u> Remand Order"), at 2, 4-6.]

The hearings officer ruled, in pertinent part, that: 1)
the DOE offered Aliah K. a FAPE at her home school; 2) the DOE's
transition plan was adequate; and 3) there were no procedural
violations that resulted in the denial of a FAPE.  [<u>Id.</u> at 6-7.]
On appeal, the district judge in <u>L.M.</u>, Senior United States
District Judge Alan C. Kay, rejected the majority of Plaintiffs'
allegations of procedural violations of the IDEA.  [<u>Id.</u> at 31-
32.]  Judge Kay, however, found that "the DOE may have violated
the 'stay put' provision by failing to resume payment for
Student's night and weekend Skills Trainer services from
November 5, 2004 through the end of December 2004[,]" and
remanded this issue to the Office of Administrative Hearings
("OAH") of the Department of Commerce and Consumer Affairs

("DCCA"). [Id. at 32.] Judge Kay also found that: Aliah K.'s May 2004 IEP offered a FAPE and that a change in her placement was appropriate; the proposed transition plan was adequate; and placement at Aliah K.'s home school was appropriate. [Id. at 33-43.]

On August 9, 2006, the Clerk of Court entered final judgment pursuant to the L.M. Remand Order. [L.M., dkt. no. 50.] The next docket entry in the case is a Receipt for Administrative Records, filed August 23, 2007. In it, the DCCA acknowledged receipt of the administrative record in L.M., "in which a final judgment or stipulation for dismissal has been entered and the time for filing a motion for new trial or rehearing and for appeal has passed." [L.M., dkt. no. 51.] Both counsel for Plaintiffs and counsel for Defendant received electronic notice of the document.

Plaintiffs state that, for some unknown reason, the OAH did not restore the case to the administrative hearing calendar after the remand. Plaintiffs note that, in other cases, the OAH has calendared remands, and sometimes even decided them, without any action by the parties. [Mem. in Supp. of Motion at 4-5 & n.2.] After a formal request to calendar the case, OAH set a status conference for April 9, 2010. [Id. at 5; Varady Decl., Exh. 6 (OAH Notice of Status Conference, filed 3/30/10).] Plaintiffs argue that, during the period between the remand and

the re-calendaring of the administrative case, the DOE was on notice that Plaintiffs continued to invoke the stay put provision[2] to stay at Loveland.  [Mem. in Supp. of Motion at 5; Varady Decl., Exh. 7 (letter dated 12/10/05 to Lane H. Tsuchiyama, counsel for the DOE, from Carl M. Varady noting that stay put was in place and demanding that the DOE pay the outstanding amount of $87,867.87 to Loveland).]  According to Plaintiffs, the DOE acknowledged that this position was correct by making a partial payment in response to the December 10, 2005 demand letter.  [Mem. in Supp. of Motion at 5; Varady Decl., Exh. 8 (letter dated 1/11/06 to Lane H. Tsuchiyama from Carl M. Varady noting that Loveland received a partial payment from the DOE for services rendered to Aliah K.).]

        Based on the evidence in the record in the instant case, and on counsel's representations at the hearing on the Motion, the administrative proceedings on remand are still pending.

        **C.    The Instant Action**

_____

        [2] The "stay put" provision is 20 U.S.C. § 1415(j), which states, in pertinent part: "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child[.]"  The corresponding provision under Hawai`i law is Haw. Admin. R. § 8-60-72(a).

Plaintiffs filed the instant action on July 29, 2010.[3]
The instant case was originally assigned to Chief United States
District Judge Susan Oki Mollway.  On August 10, 2010, Plaintiffs
filed their Motion for Temporary Restraining Order ("August 2010
TRO Motion").  [Dkt. no. 8.]  After the parties briefed the
August 2010 TRO Motion,[4] Chief Judge Mollway scheduled a hearing
on the motion on August 27, 2010.  [8/27/10 Trans., filed 10/1/10
(dkt. no. 29).]  At the proceeding, however, the parties agreed
that: Plaintiffs would withdraw the August 2010 TRO Motion
without prejudice; the parties would promptly move to reopen
L.M.; and the parties would bring the issues raised in the August
2010 TRO Motion to Judge Kay for him to decide.  [Id. at 20-21.]

On August 27, 2010 in L.M., Plaintiffs filed their
Motion to Reopen Case and for Temporary Restraining Order ("L.M.
TRO Motion").  [L.M., dkt. no. 52.]  Defendant filed its
memorandum in opposition on September 1, 2010.  [L.M., dkt. no.
54.]  Judge Kay scheduled a hearing on the L.M. TRO Motion on
September 9, 2010.  [L.M., 9/9/10 Trans., filed 9/30/10 (dkt. no.
56).]  At the proceeding, however, Judge Kay found that it was

_____

[3] The instant case was originally one of fourteen individual
cases filed jointly in Parents of Loveland Academy, et al. v.
Department of Education, CV 09-00306 DAE-LEK.  The district judge
in that case requested that the plaintiffs re-file the cases as
separate actions, and the plaintiffs complied.

[4] Defendant filed its Memorandum in Opposition to the August
2010 TRO Motion on August 18, 2010 [dkt. no. 10], and Plaintiffs
filed their reply on August 25, 2010 [dkt. no. 12].

appropriate for the parties to proceed with the claims in the
L.M. TRO Motion in the instant case, and not in L.M. Judge Kay
therefore deemed the L.M. TRO Motion withdrawn without prejudice.
[L.M., Minutes, filed 9/9/10 (dkt. no. 55).]

The day after Judge Kay's ruling in L.M., Chief Judge
Mollway reassigned the instant case to Judge Kay in light of the
relationship between L.M. and the instant case. [Order
Reassigning Case, filed 9/10/10 (dkt. no. 19).] On September 16,
2010, pursuant to the parties' consent and Judge Kay's approval,
the instant case was reassigned to this Court. [Dkt. no. 25.]
Litigation in this action proceeded in the normal course for
several months thereafter.

D.    **Plaintiffs' Arguments**

In the instant Motion, Plaintiffs argue that they are
entitled to preliminary relief under the standard set forth in
Winter v. Natural Resources Defense Council, Inc., 129 S. Ct.
365, 374 (2008): they are likely to succeed on the merits;
Aliah K. is likely to suffer irreparable harm without preliminary
relief; the balance of equities tip in Plaintiffs' favor; and
preliminary relief is in the interests of justice. [Mem. in
Supp. of Motion at 7-8.]

Plaintiffs contend that Defendant's failure to pay for
the services Loveland has provided to Aliah K. under stay put
violates the IDEA, a civil rights statute, requiring a

presumption of irreparable harm.  In enacting Section 1415(j),

Congress determined that the premature removal of a disabled

student from her current educational placement to a placement

that may be found to be inappropriate carries an inherent risk of

irreparable harm.  [Mem in Supp. of Motion at 9-10.]

In addition, Plaintiffs present a declaration from a

Loveland billing administrator stating that Aliah K. will no

longer be able to attend Loveland unless it receives immediate

payment of all outstanding amounts owed.  [Motion, Decl. Of

Maurolyn Gurtiza ("Gurtiza Decl."), at ¶ 5.]  The amount

outstanding from July 2008 to January 2011 is $628,470.47.

[Gurtiza Decl., Exh. 1.]

Plaintiffs next argue that they are likely to succeed

on the merits of the instant action seeking payment of stay put

expenses because the proceedings associated with L.M. are still

pending.  At the time of Judge Kay's decision in L.M., Loveland

was Aliah K.'s current education placement pursuant to an

October 15, 2002 Compromise and Settlement Agreement between the

DOE and Loretta M., then known as Loretta K. ("2002-2003

Settlement Agreement"),[5] and the Loveland Settlement Agreement.

_____

[5] The 2002-2003 Settlement Agreement is Exhibit 9 to the
Declaration of Carl M. Varady, filed April 7, 2011.  [Dkt. no.
50.]  Plaintiffs intended it to be Exhibit 9 to the Motion, but
omitted it when they filed the Motion.  [Id. at ¶ 2.]  The
agreement required the DOE to pay for Aliah K.'s Loveland tuition
and IEP-authorized related expenses for the 2002-2003 school
(continued...)

Plaintiffs contend that, under stay put, this placement must continue at the DOE's expense until the resolution of all proceedings associated with L.M., including the pending remand to the hearings officer. [Mem. in Supp. of Motion at 15-16.] Plaintiffs argue that Aliah K.'s Loveland placement is a bilateral placement pursuant to the two settlement agreements and the DOE's payment of stay put expenses until June 2008. A bilateral placement must continue until it is superseded by agreement or subsequent decision. [Id. at 13.]

Plaintiffs argue that courts consistently hold that failing to make payments or cutting off funds for special education programs constitutes a unilateral change in placement, which violates the IDEA and warrants injunctive relief. Further, monetary awards for the reimbursement of out-of-pocket educational expenses are equitable in nature and are appropriate for preliminary relief so that parents are not forced to either accept an inadequate public school placement or personally bear the costs of private education during the time-consuming review process. [Id. at 14-15.] Plaintiffs also argue that their position is supported by Judge Kay's analysis during the September 9, 2010 proceeding. [Id. at 16-19 (quoting L.M., 9/9/10 Trans., filed 9/30/10 (dkt. no. 56), at 18-23).]

---

[5](...continued)
year. [2002-2003 Settlement Agreement at 1.]

Plaintiffs contend that the balance of the equities tips in their favor, given Defendant's unilateral refusal to make payments mandated under stay put and the United States Supreme Court's rejection of the argument that such payments impose a substantial financial burden on public school districts. [Id. at 19 (citing Forest Grove Sch. Dist. v. T.A., 129 S. Ct. 2484, 2496, 174 L. Ed. 2d 168, 183 (2009)).] Plaintiffs emphasize that the equities weigh even more heavily in their favor because, unlike the student in Forest Grove, Aliah K.'s placement at Loveland is not in dispute. [Id.]

Finally, Plaintiffs argue that an injunction would be in the public interest. They assert that compliance with the IDEA is clearly in the public interest, and Defendant has long affirmed its support for the IDEA's goals and objectives in prior IDEA cases. Plaintiffs also argue that no public interest would be served by allowing Defendant to violate the law by failing to make the required stay put payments necessary to support Aliah K.'s education program. [Id. at 20.]

Plaintiffs therefore urge the Court to issue an order: declaring that Defendant's failure to pay for Aliah K.'s expenses at Loveland violates stay put; requiring Defendant to immediately pay all outstanding expenses due to Loveland, and for other services provided, and to continue to pay her stay put expenses during the pendency of the underlying proceeding; determining

Plaintiffs to be the prevailing party; and awarding any other relief necessary to require Defendant to honor its obligations under § 1415 and to continue Aliah K.'s placement at Loveland. [Id. at 21-22.]

## II. **Defendant's Opposition**

In its memorandum in opposition to the instant Motion, Defendant incorporates by reference its memorandum in opposition to the August 2010 TRO Motion. Defendant notes that the instant Motion is virtually identical to the August 2010 TRO Motion, with the exception of Plaintiffs' argument that Aliah K.'s placement at Loveland was pursuant to a bilateral placement. [Mem. in Opp. at 2.]

### A. **Memorandum in Opposition to August 2010 TRO Motion**

In the memorandum in opposition to the August 2010 TRO Motion, Defendant emphasizes that, in seeking preliminary relief, Plaintiffs seek a change to the status quo because the DOE is not currently paying for Aliah K.'s Loveland expenses. Defendant argues that this places a higher burden upon Plaintiffs. [Mem. in Opp. to August 2010 TRO Motion at 5.]

Defendant argues that Plaintiffs are not likely to succeed on the merits of Count I because there is no settlement agreement or result of a resolution session which requires Aliah K.'s current placement at Loveland. The settlement agreements that Plaintiffs cite only address the period ending

June 30, 2005.  Further, Plaintiffs have not contested any of
Aliah K.'s IEPs after the 2004-2005 IEP that was at issue in L.M.
Judge Kay ruled that the 2004-2005 IEP offered Aliah K. a FAPE,
and she did not appeal that ruling.  [Id. at 6.]  Defendant also
emphasizes that Plaintiffs were not a party to the Loveland
Settlement Agreement, raising questions whether they would have
standing to sue for a breach of that agreement.  Furthermore, the
statute of limitations for the enforcement of either the 2002
Settlement Agreement or the Loveland Settlement Agreement has
long since expired.  [Id. at 7.]  Defendant also argues that
Plaintiffs are not likely to succeed on Count II because the
Motion does not point to any evidence of a violation of Section
504 against either Aliah K. or Loretta M.  [Id. at 7-9.]

        Defendant next contends that Plaintiffs cannot
establish irreparable harm because they have only alleged a
monetary injury, for which they have an adequate remedy at law.
Although Plaintiffs state that they are seeking the equitable
remedy of tuition reimbursement, their Complaint alleges a breach
of a settlement agreement between the parties.  The Complaint
does not challenge any IEP or other offer of a FAPE.  [Id. at 10-
11.]  Assuming, *arguendo*, that Plaintiffs have a valid claim
under the IDEA for tuition reimbursement because of an
inappropriate IEP, Plaintiffs failed to exhaust their
administrative remedies because they did not challenge any of

14

Aliah K.'s IEPs after the 2004-2005 IEP.  Thus, Defendant

contends that Plaintiffs are not entitled to any IDEA remedies,

such as tuition reimbursement.[6]  [Id. at 13-14.]

**B.    Memorandum in Opposition to the Motion**

In the memorandum in opposition to the instant Motion,

Defendant argues that stay put does not apply to the period after

Judge Kay's decision in L.M. because there were no outstanding

substantive challenges to Aliah K.'s placement.  The issues that

Judge Kay remanded to the hearings officer were unrelated to the

issues of FAPE and placement.  Defendant notes that Plaintiffs

have cited no authority that supports their position that stay

put applies under these circumstances.  [Mem. in Opp. at 4-5.]

Defendant asserts that stay put requires a substantive challenge

to placement.  [Id. at 5-9.]

Defendant also notes that there is no legal authority

for Plaintiffs' reliance on either the comments that Judge Kay

made during the September 9, 2010 proceeding or Defendant's

payment of Aliah K.'s Loveland expenses beyond the time Defendant

was obligated to do so.  Defendant urges the Court to disregard

these issues.  [Id. at 10.]

---

[6] The Court notes that Defendant also argued that stay put
does not apply, [Mem. in Opp. to August 2010 TRO Motion at 11-
13,] but the Court has not reviewed those arguments here because
Defendant's subsequent filings addressed this issue in greater
detail.

## C. **Supplemental Memorandum in Opposition**

In its supplemental memorandum in opposition to the Motion, Defendant argues that the automatic injunctive relief standard does not apply to the instant dispute whether stay put applies during the pendency of the L.M. remand.  Defendant argues that the automatic standard only applies in cases where the student's placement is in jeopardy due to a dispute about placement.  Defendant emphasizes that placement is not at issue in the remand proceedings.  [Suppl. Mem. in Opp. at 3-4.]

Further, Defendant contends that Judge Kay's rulings on Aliah K.'s placement are final, separate from the remand issues, and appealable under the standard set forth in Chugach Alaska Corp. v. Lujan, 915 F.2d 454, 457 (9th Cir. 1990).  Defendant also emphasizes that the remand does not involve any unresolved questions related to the ultimate issue in the case, as the administrative remands did in Shapiro ex rel. Shapiro v. Paradise Valley School District No. 69, 152 F.3d 1159, 1160-61 (9th Cir. 1998), and Alsea Valley Alliance v. Department of Commerce, 358 F.3d 1181, 1184 (9th Cir. 2004).  Thus, it was not necessary for Judge Kay to stay judgment pending the resolution of the remand; his placement rulings were final and immediately appealable. [Id. at 5-6.]  Defendant also emphasizes that Chugach, Shapiro, and Alsea examined the issue whether there was jurisdiction over an appeal from the district court proceedings.  Defendant

therefore argues that those cases are distinguishable from the instant case. [Id. at 7.] Defendant asserts that, because Plaintiffs did not appeal Judge Kay's placement decision in L.M., his ruling remains in tact and requires Aliah K.'s placement at her home school. [Id. at 7-8.]

Defendant's supplemental memorandum also includes a declaration from a DOE District Educational Specialist for Autism. [Suppl. Mem. in Opp., Decl. Of Lauren Moriguchi ("Moriguchi Decl."), at ¶ 1.] Ms. Moriguchi states that, after Judge Kay's ruling that the DOE offered Aliah K. a FAPE, the DOE "mistakenly continued to pay for Aliah K.'s placement at Loveland Academy until 2008." [Id. at ¶ 6.] She asserts that, in doing so, the DOE neither conceded nor agreed that Loveland was an appropriate placement for Aliah K. [Id. at ¶ 7.[7]]

## III. **Plaintiffs' Reply**

In their reply, Plaintiffs first note that their principal argument is that any motion for stay put "functions as an automatic preliminary injunction", and therefore they need not establish the traditional factors necessary for an award of preliminary relief. [Reply at 1 n.1 (citation omitted).] They also assert that stay put applies as long as any proceedings are pending, "even imperfect remands as is the case here." [Id.]

---

[7] The seventh paragraph in the Moriguchi Declaration is erroneously identified as a second paragraph 6.

If the Court is inclined to look at the traditional factors, Plaintiffs argue that the appropriate standard is the "serious question" version of the sliding scale test, in light of Winter and Alliance for the Wild Rockies v. Cottrell, 623 F.3d 1127 (9th Cir. 2011). Plaintiffs contend that they have met all of these factors. [Id. at 2-5.]

Plaintiffs next contend that the L.M. Remand Order was not appealable because, where the district court remands an issue to the adjudicating body but contemplates further judicial proceedings, the district court should stay the proceedings and not dismiss the case. [Id. at 12-13.] Plaintiffs acknowledge that a remand order is considered final when it: conclusively resolves a separate legal issue; requires the agency to apply a potentially erroneous rule that could result in a wasted proceeding; and an immediate appeal is required to preserve review as a practical matter. [Id. at 14 (citing Chugach Alaska Corp., 915 F.2d at 457).] Plaintiffs argue that those factors were not present in L.M. Plaintiffs contend that there was no resolution of separate legal issues because Judge Kay did not make the required determination under Fed. R. Civ. P. 54(b); the remand only required the hearings officer to apply well-established rules of evidence and stay put law; and both parties would still have the right of appeal after the resolution of the remand. Plaintiffs argue that, practically speaking, L.M. is

18

stayed pending the resolution of the remand because there was no

right of appeal from the August 9, 2010 order.  [<u>Id.</u> at 14-15.]

<u>**STANDARD**</u>

In general, the standard for a temporary restraining

order or a preliminary injunction is as follows:

> "[I]njunctive relief is an extraordinary
> remedy that may only be awarded upon a clear
> showing that the plaintiff is entitled to such
> relief." <u>Winter v. Natural Res. Def. Council,
> Inc.</u>, 129 S. Ct. 365, 376 (2008).  The standard
> for granting a preliminary injunction and the
> standard for granting a temporary restraining
> order are identical.  <u>See</u> <u>Haw. Cnty. Green Party
> v. Clinton</u>, 980 F. Supp. 1160, 1164 (D. Haw.
> 1997); Fed. R. Civ. P. 65.

<u>Sakala v. BAC Home Loans Servicing, LP</u>, CV. No. 10-00578 DAE-LEK,

2011 WL 719482, at *4 (D. Hawai`i Feb. 22, 2011) (alteration in

original).

> A plaintiff seeking a preliminary injunction
> must establish that he is likely to succeed on the
> merits, that he is likely to suffer irreparable
> harm in the absence of preliminary relief, that
> the balance of equities tips in his favor, and
> that an injunction is in the public interest.  <u>Am.
> Trucking Ass'ns v. City of Los Angeles</u>, 559 F.3d
> 1046, 1052 (9th Cir. 2009) (quoting <u>Winter v.
> Natural Res. Def. Council, Inc.</u>, --- U.S. ----,
> 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008))
> (explaining that, "[t]o the extent that [the Ninth
> Circuit's] cases have suggested a lesser standard,
> they are no longer controlling, or even viable"
> (footnote omitted)); <u>see also</u> <u>Winter</u>, 129 S. Ct.
> at 374-76 (holding that, even where a likelihood
> of success on the merits is established, a mere
> "possibility" of irreparable injury is
> insufficient to warrant preliminary injunctive
> relief, because "[i]ssuing a preliminary
> injunction based only on a possibility of
> irreparable harm is inconsistent with [the Supreme

19

Court's] characterization of injunctive relief as
an extraordinary remedy that may only be awarded
upon a clear showing that the plaintiff is
entitled to such relief").

Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co., 685 F. Supp.

2d 1123, 1128-29 (D. Hawai`i 2010) (footnote and some citations

omitted) (alterations in original).  The Ninth Circuit has held

that its "serious questions" version of the sliding scale test

for preliminary injunctions[8] survives Winter to the extent that,

a court may grant a preliminary injunction where the plaintiff

(1) "demonstrates . . . that serious questions going to the

merits were raised and the balance of hardships tips sharply in

the plaintiff's favor[,]" and (2) satisfies the other Winter

factors, likelihood of irreparable injury and that the injunction

_____

[8] The Ninth Circuit has stated the sliding scale test as
follows:

> "A preliminary injunction is appropriate when
> a plaintiff demonstrates 'either: (1) a likelihood
> of success on the merits and the possibility of
> irreparable injury; or (2) that serious questions
> going to the merits were raised and the balance of
> hardships tips sharply in [the plaintiff's]
> favor.'" Lands Council v. Martin (Lands Council
> II), 479 F.3d 636, 639 (9th Cir. 2007) (quoting
> Clear Channel Outdoor Inc. v. City of Los Angeles,
> 340 F.3d 810, 813 (9th Cir. 2003)).  These two
> options represent extremes on a single continuum:
> "the less certain the district court is of the
> likelihood of success on the merits, the more
> plaintiffs must convince the district court that
> the public interest and balance of hardships tip
> in their favor."  Id.

Lands Council v. McNair, 537 F.3d 981, 987 (9th. Cir. 2008) (en
banc) (some citations and internal quotation marks omitted)
(alteration in original).

is in the public interest.  <u>Alliance for the Wild Rockies v.</u>
<u>Cottrell</u>, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (citation and
block quote format omitted) (some alterations in original).

In contrast, a motion for stay put relief functions as
an "automatic" preliminary injunction; the moving party need not
establish the traditional factors necessary to obtain preliminary
relief.  <u>Joshua A. v. Rocklin Unified Sch. Dist.</u>, 559 F.3d 1036,
1037 (9th Cir. 2009) (citation omitted).  Plaintiffs assert that
the automatic preliminary injunction standard applies.  [Reply at
1 n.1 (citing <u>Joshua A.</u>).]  The automatic injunction standard,
however, only applies when the court considers a stay put motion;
it does apply to a preliminary injunction motion that affects a
stay put invocation, but is not itself the invocation.  <u>N.D. v.</u>
<u>Haw. Dep't of Educ.</u>, 600 F.3d 1104, 1112 (9th Cir. 2010) (holding
that the district court did not err in applying the traditional
preliminary injunction factors).  The Ninth Circuit noted that
<u>Joshua A.</u> involved a motion for stay put that the student filed
directly to the Court of Appeals, but <u>N.D.</u> involved the review of
the district court's ruling on a motion for preliminary
injunction in an action seeking to enforce the stay put
invocation associated with a concurrent request for due process
hearing.[9]  <u>Id.</u> (citing <u>Johnson ex rel. Johnson v. Special Educ.</u>

_____

[9] At issue in <u>N.D.</u> was the State of Hawaii's "furlough
Fridays" program in which the public schools would be closed for
(continued...)

21

<u>Hearing Office, State of California</u>, 287 F.3d 1176, 1180 (9th Cir. 2002) (per curiam) (finding the automatic provision did not apply when the plaintiff sought an injunction for a claim regarding the validity of an existing stay-put order)).

In the instant case, neither the action itself nor the Motion currently before the Court is the original invocation of stay put. Plaintiffs invoked stay put in <u>L.M.</u> The instant action, and the instant Motion seeking preliminary relief, at most, merely affect the entitlement to stay put that Plaintiffs asserted in <u>L.M.</u> The Court will therefore apply the <u>Winter</u> factors, as modified by <u>Alliance for the Wild Rockies</u>.

---

[9](...continued)
seventeen days in the 2009-2010 school year, as well as for additional days in the 2010-2011 school year, due to the State's fiscal crisis. On October 19, 2009, N.D. requested a due process hearing regarding the change that the furloughs might make to his IEP. In connection with that request, N.D. invoked the stay put provision. On October 20, 2009, N.D. and other students filed a civil action against the State. In particular, N.D. alleged, *inter alia*, that his stay put invocation entitled him to remain in his then-current educational placement. <u>N.D.</u>, 600 F.3d at 1108. In contrast, Joshua A. appealed the district court's denial of his appeal of the administrative law judge's decision that the program which the school district offered him for the 2006-2007 school year provided a FAPE. <u>Joshua A. v. Rocklin Unified Sch. Dist.</u>, 319 Fed. Appx. 692 (9th Cir. 2009) (affirming the district judge's denial of the appeal). Less than a month after filing his appeal of the district court's decision, Joshua A. filed a motion for stay put with the Ninth Circuit. <u>Joshua A. v. Rocklin Unified Sch. Dist.</u>, 559 F.3d 1036, 1037 (9th Cir. 2009).

**DISCUSSION**

**I.    Judicial Notice**

At the outset, the Court takes judicial notice of the record in L.M.  This Court may take judicial notice, *sua sponte*, at any stage of a case.  Fed. R. Evid. 201(c), (f).  The Court may take judicial notice of facts that are "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The contents of the record in L.M. can be accurately and readily determined through the district court's electronic filing system, the accuracy of which cannot reasonably be questioned.  Moreover, the parties have asked this Court to consider specific documents from the L.M. record and, because the proceedings in L.M. are critical to the merits of the instant Motion, it is appropriate for this Court to consider the record in L.M. in its entirety.  The Court now turns to the merits of the instant Motion.

**II.   Serious Questions Going to the Merits**

At the outset, the Court notes that the Motion does not present any arguments regarding the merits of Count II, the Section 504 claim.  Plaintiffs' counsel confirmed at the hearing on the Motion that Plaintiffs are not seeking preliminary relief based on Count II.  The Court therefore construes the Motion as based solely upon Count I.

23

## A.  Enforcement of Settlement Agreement

Count I specifically seeks enforcement of "the terms and conditions of the settlement agreement pursuant to 20 U.S.C. § 1415(f)(1)(B)(iii)[.]" [Complaint at ¶ 22.]  Section 1415(f)(1) states, in pertinent part:

> (B) Resolution session
>     (i) Preliminary meeting
>         Prior to the opportunity for an impartial due process hearing under subparagraph (A), the local educational agency shall convene a meeting with the parents and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint--
>     . . . .
>     (iii) Written settlement agreement
>         In the case that a resolution is reached to resolve the complaint at a meeting described in clause (i), the parties shall execute a legally binding agreement that is--
>             (I) signed by both the parent and a representative of the agency who has the authority to bind such agency; and
>             (II) enforceable in any State court of competent jurisdiction or in a district court of the United States.

The only settlement agreements that Plaintiffs cite in this case are the 2002-2003 Settlement Agreement and the Loveland Settlement Agreement.  The 2002-2003 Settlement Agreement may constitute a § 1415(f)(1)(B)(iii) settlement agreement, but it only addressed the 2002-2003 school year.  The Loveland Settlement Agreement is not a § 1415(f)(1)(B)(iii) settlement agreement because it did not arise from a resolution session and it is not an agreement between Loretta M. and the DOE.  In

addition, Plaintiffs have acknowledged that they are not seeking an order requiring that Defendant obey the settlement agreements; they seek an order requiring stay put payments under the IDEA. [Reply at 8.] Defendant's counsel submitted a declaration stating that he searched his office and did not find any resolution session settlement agreement for the period at issue in the Complaint. [Mem. in Opp. to August 2010 TRO Motion, Decl. of Gary K.H. Kam, at ¶ 7.]

Based on the existing record, the Court finds that there is no resolution session settlement agreement covering the period at issue in the Complaint. Plaintiffs have therefore failed to raise serious questions going to the merits of Count I, to the extent that Count I is based on § 1415(f)(1)(B)(iii).

**B.    Bilateral Agreement**

Plaintiffs have also alleged that Aliah K. is attending Loveland pursuant to a bilateral agreement under the two settlement agreements and the DOE's payment of stay put expenses until June 2008. As noted, *supra*, the terms of the settlement agreements do not extend beyond the 2004-2005 school year. Thus, they do not constitute evidence of a bilateral agreement that Aliah K. would remain at Loveland during the period at issue in this case. As to the DOE's payment of stay put expenses through June 2008, Plaintiffs have not presented any evidence that the parties mutually agreed that DOE would pay stay put expenses

indefinitely through the L.M. remand, which was idle for almost four years.  Plaintiffs only point to a December 10, 2005 demand letter and a January 11, 2006 letter noting that the DOE made a payment in response to the demand letter.  [Varady Decl., Exhs. 7 & 8.]  These letters, however, address Aliah K.'s stay put placement before Judge Kay issued the L.M. Remand Order.  They are not evidence of the purported bilateral agreement regarding the time in which the L.M. remand was pending.  Defendant has presented evidence that it believed it was not obligated to make payments through 2008 and that it never conceded or agreed to Aliah K.'s placement at Loveland.  [Moriguchi Decl. at ¶¶ 5-6.]  Plaintiffs have not presented contradictory evidence.  The Court therefore FINDS that there is no bilateral agreement between the parties that Aliah K. would remain at Loveland during the pendency of the L.M. remand.[10]

Plaintiffs have therefore failed to raise serious questions going to the merits of Count I, to the extent that

---

[10] The Court acknowledges that its ruling is contrary to Judge Kay's statements at the September 9, 2010 proceeding regarding the L.M. TRO Motion.  The Court respectfully disagrees with Judge Kay's assessment on the bilateral agreement issue. Further, although the transcript of the proceeding is part of the record in L.M., [9/9/10 Trans., filed 9/30/10 (dkt. no. 56),] Judge Kay did not ultimately rule on the L.M. TRO Motion, deeming it withdrawn without prejudice, and there is no analysis of the bilateral agreement issue in the minute order that Judge Kay issued regarding the proceeding.  [L.M., Minutes, filed 9/9/10 (dkt. no. 55).]  The Court therefore is not bound by Judge Kay's statements on the bilateral agreement issue.

Count I is based on a bilateral agreement of the parties.

C.  **Enforcement of Stay Put**

Plaintiffs argue that they are likely to succeed on the merits because Loveland was Aliah K.'s placement at the time she challenged the 2004-2005 IEP and stay put requires the DOE to pay for her placement at Loveland until the parties exhaust their appeals or they resolve the matter by agreement.  Insofar as the L.M. remand is still pending, and the L.M. Remand Order is not an appealable final order, the request for due process made in 2005 is still pending, requiring the DOE to pay for Aliah K.'s placement at Loveland under stay put.

Plaintiffs have not expressly pled a claim for the enforcement of stay put in Count I.  They have, however, alleged that Defendant's actions are depriving Aliah K. of her "right to [her] educational placement[,]" [Complaint at ¶ 21,] and that Defendant has "unilaterally deprived and interfered with ALIAH K.'s right to a" FAPE [id. at ¶ 16].  Thus, viewing the Complaint as a whole, the Court finds that Count I also alleges a claim for the enforcement of Aliah K.'s rights under the stay put provision, 20 U.S.C. § 1415(j).

The threshold issue in evaluating the merits of Plaintiffs' stay put claim is determining whether the judgment that was entered pursuant to the L.M. Remand Order was a final and appealable judgment.  In the L.M. Remand Order, Judge Kay

ruled that Aliah K.'s 2004-2005 IEP offered a FAPE; the proposed transition plan was adequate; and placement at Aliah K.'s home school was appropriate. [L.M. Remand Order at 33-43.] Judge Kay, however, also remanded the matter to the OAH to determine whether the DOE violated § 1415(j). [Id. at 32.] If the judgment entered pursuant to the L.M. Remand Order was final and appealable, Plaintiffs waived their right to appeal Judge Kay's rulings regarding FAPE, placement, and the proposed transition plan. Once they waived that right, stay put would no longer apply. If, however, the judgment was not appealable, L.M. would be effectively stayed pending the resolution of the remand to the OAH. Judge Kay would consider the decision on remand and render a final decision on all issues in L.M. The judgment entered pursuant to that final decision would be appealable.

> Under [28 U.S.C. §] 1291, appellate jurisdiction extends only to "final decisions of the district courts." Importantly, remand orders are generally not "final" decisions for purposes of section 1291. Chugach Alaska Corp. v. Lujan, 915 F.2d 454, 457 (9th Cir. 1990). A district court's remand order may be considered final in certain circumstances, however:
>
>> A remand order will be considered final where (1) the district court conclusively resolves a separable legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable.
>
> Alsea Valley Alliance v. Dep't of Commerce, 358 F.3d 1181, 1184 (9th Cir. 2004) (internal quotation marks and citation omitted).

Pit River Tribe v. U.S. Forest Service, 615 F.3d 1069, 1075 (9th Cir. 2010) (some citations omitted). All of the factors must be present. See Alsea Valley 358 F.3d at 1184 ("We need not decide whether the Remand Order meets the first two criteria because we conclude that the third prerequisite is lacking.").

The Court questions whether this finality test should be applied to remands under the IDEA. It appears that the test is designed for administrative review of an agency decision involving its rule-making capacity. See, e.g., id. ("[O]nly *agencies* compelled to refashion their own rules face the unique prospect of being deprived of review altogether. An agency, after all, cannot appeal the result of its own decision." (citation omitted) (emphasis in original)). This Court cannot conceive of any circumstance under which a remand order in a appeal of a hearings officer's decision on a student's due process request would satisfy this test. The Court notes that other circuits do not apply a similar test to IDEA cases. See, e.g., Somoza v. New York City Dep't of Educ., 538 F.3d 106, 113 n.5 (2d Cir. 2008) (examining whether there was "evidence of the Court's intent to retain jurisdiction or any contemplation of further proceedings" (citation and internal quotation marks omitted)). In spite of this Court's concerns, the Court must apply the Chugach test because there is Ninth Circuit precedent applying the test in an IDEA case. See Shapiro ex rel. Shapiro

v. Paradise Valley Unified Sch. Dist. No. 69, 152 F.3d 1159, 1161
(9th Cir. 1998) (citing Chugach in holding that the district
court's remand order was not final for purposes of appeal).

In this Court's view, the remanded issue, whether the
DOE "violated the 'stay put' provision by failing to resume
payment for Student's night and weekend Skills Trainer services
from November 5, 2004 through the end of December 2004" [L.M.
Remand Order at 32], is clearly separable from Judge Kay's
findings that the 2004-2005 IEP offered a FAPE, that Aliah K.'s
home school was an appropriate placement, and that the transition
plan was appropriate.[11]  The L.M. Remand Order, however, does not
meet the remaining factors.  The remand does not force the OAH to
apply a potentially erroneous rule that may result in a wasted
hearing.  Even if the Ninth Circuit were to reverse the L.M.
Remand Order on appeal and hold that the DOE did not offer a
FAPE, the DOE wold still be required to pay for the expenses at
issue in the remand.  Further, even if immediate review of the
L.M. Remand Order were unavailable, both parties would have the
opportunity to seek review after the conclusion of the remand

_____

[11] Plaintiffs argue that the scope of the remand was broader
than this Court has characterized it.  [L.M. Remand Order at 27-
28.]  They therefore contend that the remand issues are not
clearly separable from the issues that Judge Kay ruled upon and
that it is not clear whether he would have granted Rule 54(b)
certification.  Regardless of how the scope of the remand is
characterized, it only addresses the determination of stay put
benefits; the remand does not address any facts or issue that
would alter Judge Kay's FAPE and placement rulings.

proceedings.  The Court therefore FINDS that the judgment entered
pursuant to the L.M. Remand Order was not final and appealable.
Plaintiffs are therefore likely to prevail on the merits of Count
I, to the extent that Count I seeks a determination that L.M. is
an open proceeding and that stay put applies.  This, however,
does not necessarily mean that they are likely to prevail on, or
have raised serious questions as to the merits of, their request
for relief in Count I - the payment of all outstanding amounts
due to Loveland and the payment of all future amounts until the
resolution of L.M.  That issue requires the Court to consider the
equitable factors discussed below.

III.  **Balancing of the Equities**

        The equitable considerations in this case are relevant,
not only as a factor in the preliminary injunction analysis, but
also as to the merits of Plaintiffs' claim for relief.

> The IDEA vests courts with "broad discretion"
> to fashion appropriate relief.  See Sch. Comm. of
> Burlington [v. Mass. Dep't of Educ.], 471 U.S.
> [359,] 369-70 [(1985)].  "Equitable considerations
> are relevant in fashioning relief" under the IDEA.
> Sch. Comm. of Burlington, 471 U.S. at 374.  As the
> court noted earlier in this order, "[t]he conduct
> of both parties must be reviewed to determine
> whether relief is appropriate."  Parents of
> Student W. [v. Puyallup Sch. Dist., No. 3], 31
> F.3d [1489,] 1493 [(9th Cir. 1994)] (internal
> citations omitted).

A.R. v. Hawaii, Civil No. 10-00174 SOM/RLP, 2011 WL 1230403, at
*10 (D. Hawai`i March 31, 2011) (some citations omitted) (some
alterations in original).  Even where a parent is entitled to

reimbursement for private school placement because the public placement violated the IDEA, the court has the discretion to reduce the amount of the reimbursement award if warranted based on the equities of the circumstances. Forest Grove Sch. Dist. v. T.A., 129 S. Ct. 2484, 2496 (2009). "In considering the equities, courts should generally presume that public-school officials are properly performing their obligations under IDEA." Id. (citing Schaffer v. Weast, 546 U.S. 49, 62-63, 126 S. Ct. 528, 163 L. Ed. 2d 387 (2005) (Stevens, J., concurring)).

Judge Kay filed the L.M. Remand Order, in which he concluded that the 2004-2005 IEP offered a FAPE and that Aliah K.'s home school was an appropriate placement, on August 9, 2006. Although this was not a final order in light of the remand on the stay put issue, the Clerk of Court entered judgment on the same date. Further, approximately a year later, the district court returned the administrative record in this case to the DCCA. [L.M., Receipt for Administrative Records, filed 8/23/07 (dkt. no. 51.] The L.M. judgment, however, was not appealable, and Judge Kay should have instead entered a stay of the proceedings pending the OAH's ruling on the remand. See Shapiro, 152 F.3d at 1160-61. Plaintiffs have apparently been aware of this fact since the entry of judgment, as evidenced by their constant position that stay put applied, but they never sought relief from the entry of judgment, even after receiving notice of

the return of the administrative record.  Plaintiffs are not
solely to blame for the confused status of L.M. because Defendant
also could have moved for a certification of a partial judgment
on multiple claims pursuant to Fed. R. Civ. P. 54(b).  Based on
the fact that the L.M. Remand Order clearly did not contemplate
further proceedings in the district court, Judge Kay would likely
have granted the motion, which would have forced Plaintiffs
either to litigate the FAPE and placement issues on appeal or to
waive that right.

Even without an immediate appeal addressing the FAPE
and placement issues, the parties could have taken affirmative
steps to advance the remand on the OAH calendar.  Instead,
neither of the parties took any action to litigate the remand
issue until three and a half years after the L.M. Remand Order.
[Mem. in Opp. to August 2010 TRO Motion, Decl. of Gary K.H. Kam,
Exh. 4 (3/9/10 letter to Richard C. Young, Esq., Hearing Officer
from Carl M. Varady, requesting that the hearing officer re-set
the case for hearing pursuant to the L.M. Remand Order).]
Plaintiffs apparently assert that no action was required because
in other cases, the hearings officer calendared, and sometimes
even decided, the case on remand without any action by the
parties.  Even assuming that is the case, at some point it must
have become clear to the parties that the hearing officer was not
re-calendaring the remand in a timely manner.  Further, after

Mr. Varady's March 9, 2010 letter requesting that the matter be
set for hearing, the hearing officer set a status conference for
April 9, 2010.  [Varady Decl., Exh. 6 (OAH Notice of Status
Conference, filed 3/30/10).]  Thus, the parties clearly, and
easily, could have moved the remand forward years earlier.

Of particular concern to the Court is the fact that
Plaintiffs apparently did not take timely action after the DOE
stopped making payments to Loveland for Aliah K. after June 2008.
It is not clear from the existing record whether the DOE gave
Plaintiffs notice, either before or after the fact, that it was
going to discontinue the payments.  Even if the DOE did not do
so, it is reasonable to assume that at some point Loveland would
have made Plaintiffs aware that the DOE was no longer making
payment.  Plaintiffs, however, still did not take action to
advance the remand proceedings, did not seek some form of relief
in L.M., and did not initiate a separate legal action until
participating in Parents of Loveland Academy, et al. v.
Department of Education, CV 09-00306 DAE-LEK, which was filed on
July 6, 2009.  Plaintiffs have not even included any evidence
that they attempted to resolve the matter without initiating
separate legal action by demanding payment from the DOE after it
stopped payments.[12]  Plaintiffs only present a demand letter

_____

[12] Plaintiffs' counsel represented at the hearing on the
Motion that Plaintiffs made such a demand in a 2008 letter, but
(continued...)

prior to the L.M. Remand Order, when it is undisputed that stay put applied, and email correspondence that occurred after the filing of the instant case. [Varady Decl., Exh. 7 (12/10/05 letter to Lane H. Tsuchiyama, Esq., Deputy Attorney General, from Carl M. Varady), Exh. 10 (8/9/10 email to Carl M. Varady from Gary K.H. Kam in response to a 8/2/10 email to Mr. Kam from Mr. Varady).]

Thus, insofar as Plaintiffs seek preliminary relief because Aliah K. may be excluded from Loveland unless the DOE immediately pays all outstanding amounts due to the school, Plaintiffs themselves are at least partially responsible for the situation that the parties and the Court are now faced with. In considering the equities at issue in Plaintiffs' Motion, this Court cannot ignore the responsibility that Plaintiffs have for prolonging the remand proceedings and effectively avoiding any attempt to make Judge Kay's FAPE ruling final. Cf. A.R. v. Hawaii, Civil No. 10-00174 SOM/RLP, 2011 WL 1230403, at *11 (D. Hawai`i March 31, 2011) (stating the rule that "a parent is not entitled to relief under the 'stay put' provision based on a procedural defect that the parent has indisputably caused").

The Court also notes that Loretta M. declined to participate in all subsequent IEP team meetings after the filing

---

[12](...continued)
the Court cannot consider that letter because there is no evidence of it in the record.

of the due process hearing request based on the 2004-2005 IEP,
thus taking the position that the stay put provision gave her the
right to refuse to work with the DOE.[13]  [Mem. in Opp. to L.M.
TRO Motion, Decl. of Gary K.H. Kam, Exh. 6 (IEP for meeting dates
5/2/05 and 5/5/05) at 17 (noting that Aliah K.'s grandmother did
not respond to correspondence and attempts to set meeting date
and did not appear on either date), Exh. 7 (IEP for meeting date
5/2/06) at 10 (noting that Aliah K.'s guardian did not attend the
meeting and that the IEP team did not have current assessments
because she refused to authorize evaluation and assessment of
Aliah K.), Exh. 8 (IEP for meeting date 4/30/07) at 10 (noting
that Aliah K.'s guardian gave notice that she would not attend

---

[13] At the hearing on the Motion, Plaintiffs' counsel argued
these matters are not of record and he argued that the family has
been cooperative.  The Court, however, has taken judicial notice
of the filings in L.M. and, to the extent that Plaintiffs contest
the accuracy of the IEP meeting notes regarding Loretta M.'s
unwillingness to participate in the IEP team meetings, Plaintiffs
can present competing evidence in subsequent proceedings in this
case.  Plaintiffs did have notice that Defendant was putting the
subsequent IEPs at issue in the Motion.  In opposing the instant
Motion, Defendant incorporated its memorandum in opposition to
the August 2010 TRO Motion by reference and that memorandum
discusses Aliah K.'s IEPs after the 2004-2005 IEP at issue in
L.M. [Mem. in Opp. at 2; Mem. in Opp. to August 2010 TRO Motion
at 6.]  The Court also acknowledges that the DOE had remedies
available to respond to Loretta M.'s lack of cooperation, but
those remedies, and the fact that the DOE apparently did not
avail itself of any of them, does not prevent the Court from
considering Loretta M.'s conduct in balancing the equities in the
context of the instant Motion.

The Court, however, emphasizes that its primary concern with
regard to Plaintiffs' conduct is their failure to take timely
action with regard to the L.M. remand.

the meeting "due to case 'pending due to due process'").] Other courts have rejected this same argument, and this Court does as well.

> C.H.'s parents also argued that the "stay put" provision gave them the right to refuse to work with the school district after they had filed their due process hearing request. [C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 71 (3d Cir. 2010).] The Third Circuit disagreed. "The stay-put provision," the court said, "was never intended to suspend or otherwise frustrate the ongoing cooperation of parents and the school district to reach an amenable resolution of a disagreement over educational services." Id. at 72.

A.R., 2011 WL 1230403, at *12 (some citations omitted). Again, in balancing the equities relevant to the instant Motion, this Court cannot ignore Loretta M.'s refusal to participate in the IEP process. Although Loretta M. believed that the 2004-2005 IEP did not offer a FAPE, had she participated in the formation of the three subsequent IEPs, the IEP team could possibly have formulated an IEP that did offer a FAPE and that she was satisfied with.

As for the DOE's part, the DOE erroneously believed that it was not required to pay for stay put placement from some unspecified period after the L.M. Remand Order. The DOE asserts that it paid for Aliah K.'s placement at Loveland until June 2008 by mistake. [Moriguchi Decl. at ¶ 6.] Although the DOE's position that it was not required to make stay put payments was erroneous, the fact remains that it did make the payments, for

37

whatever reason, until June 2008, almost two years after the <u>L.M.</u>
Remand Order. The Court also notes that, despite its belief that
it made the payments by mistake, the DOE has not made any
attempts to recover those amounts from Plaintiffs or Loveland.
Had the <u>L.M.</u> remand proceeded according to a more appropriate
time frame, the matter could possibly have been resolved by the
end of June 2008. At the very least, the parties' understanding
of their obligations would have been clearer than it has been
under the current facts.

Insofar as the Court relies heavily on the specific
circumstances of this case and how they weigh upon the balancing
of the equities between the parties, the Court believes that the
determination of which party should bear the financial
responsibility for the artificially extended stay put period in
<u>L.M.</u> should be left for a later date when there is a more
developed record in this case. Thus, in balancing all of the
equities relevant to the instant Motion, the Court FINDS that
they weigh against an award of preliminary relief at this time.

**IV.  <u>Likelihood of Irreparable Harm</u>**

Plaintiffs argue that a motion for preliminary
injunction in an action alleging a violation of a civil rights
statute, like the IDEA, carries a presumption of irreparable
harm. [Mem. in Supp. of Motion at 9-10 (quoting <u>Silver Sage</u>
<u>Partners, LTD v. City of Desert Hot Springs</u>, 251 F.3d 814, 827

(9th Cir. 2001); <u>Joshua A. v. Rocklin Unified Sch. Dist.</u>, 559

F.3d 1036, 1037 (9th Cir. 2009)).]

This Court has previously found that the automatic

preliminary injunction standard, which does not require the

moving party to show the traditional factors like irreparable

harm, in <u>Joshua A.</u> does not apply to the instant case.

Plaintiffs rely on the following language from <u>Silver Sage</u>

<u>Partners</u>:

> We have held that where a defendant has violated a
> civil rights statute, we will presume that the
> plaintiff has suffered irreparable injury from the
> fact of the defendant's violation. <u>Smallwood v.</u>
> <u>Nat'l Can Co.</u>, 583 F.2d 419, 420 (9th Cir. 1978)
> (discussing Title VII); <u>see also</u> <u>Burlington N.</u>
> <u>R.R. Co. v. Dep't of Revenue</u>, 934 F.2d 1064, 1074
> (9th Cir. 1991) ("The standard requirements for
> equitable relief need not be satisfied when an
> injunction is sought to prevent the violation of a
> federal statute which specifically provides for
> injunctive relief." (internal quotation marks and
> citation omitted)); <u>Gresham v. Windrush Partners,</u>
> <u>Ltd.</u>, 730 F.2d 1417, 1423 (11th Cir. 1984)
> (stating that "irreparable injury may be presumed
> from the fact of discrimination and violations of
> fair housing statutes").

251 F.3d at 827. <u>Silver Sage Partners</u>, however, did not involve

a motion for preliminary injunction. In that case, the Ninth

Circuit reinstated a jury award in favor of the plaintiff in a

Fair Housing Act case and vacated the district court's denial of

the plaintiff's motion for an injunction against future

violations of the Fair Housing Act. <u>Id.</u> at 826-27. The Ninth

Circuit held that it would presume that the plaintiff suffered

irreparable injury from the fact the defendant violated the Fair
Housing Act, particularly where the defendant did not contest its
liability. Id. at 827. In the instant case, although the Court
has found that stay put should arguably apply because L.M. is
still pending, the Court has also found that the equities of the
parties' conduct may render stay put inapplicable during the
period in question. Defendant has not conceded, and this Court
has not found, that Defendant violated the IDEA. Silver Sage
Partners therefore does not apply.

Plaintiffs also allege that Aliah K. will suffer
irreparable harm if the Court denies the Motion because she will
lose her placement at Loveland, and therefore will not receive an
appropriate education, unless the Court orders Defendant to pay
all outstanding amounts due to Loveland and to continue to pay
for all of her expenses until L.M. is ultimately resolved. As
evidence of this impending harm, Plaintiffs presented a
declaration from the Loveland billing administrator who states
that Aliah K. will no longer be able to attend Loveland unless it
receives immediate payment of all outstanding amounts owed.
[Gurtiza Decl. at ¶ 5.] In addition, Plaintiffs submitted a
billing summary showing the amount outstanding for each month
from July 2008 to January 2011. The total amount is $628,470.47.
[Gurtiza Decl., Exh. 1.]

Plaintiffs seeking preliminary injunctive
relief must "demonstrate that irreparable injury

40

is likely in the absence of an injunction[,]" <u>the</u>
<u>mere possibility of irreparable harm is</u>
<u>insufficient</u>.  <u>Winter</u>, 129 S. Ct. at 375 (finding
the Ninth Circuit's standard of a "possibility" of
harm too lenient).  "To seek injunctive relief, a
plaintiff must show that he is under threat of
suffering 'injury in fact' that is concrete and
particularized; <u>the threat must be actual and</u>
<u>imminent, not conjectural or hypothetical</u>; it must
be fairly traceable to the challenged action of
the defendant; and it must be likely that a
favorable judicial decision will prevent or
redress the injury."  <u>Summers v. Earth Island</u>
<u>Inst.</u>, 129 S. Ct. 1142, 1149 (2009).

<u>Sakala</u>, 2011 WL 719482, at *4 (emphases added) (alteration in

original).  In the Court's view, it is clear that Aliah K. will

suffer irreparable harm if she loses her placement at Loveland,

particularly because she is apparently now a high school student

and there is no current IEP even attempting to offer her a FAPE

at her current home school.  The closer question is whether

Plaintiffs have established that the threat of irreparable harm

is actual and imminent.

The Court notes that Plaintiffs' August 2010 TRO Motion

also included a declaration from Ms. Gurtiza.  The July 29, 2010

declaration attached to the August 2010 TRO Motion is identical

to Ms. Gurtiza's declaration in support of the instant Motion,

with the exception of the signature date and the fact that the

declaration in support of the August 2010 TRO Motion does not

include a billing summary.  Although Plaintiffs alleged that

Aliah K. was under threat of exclusion for non-payment in August

2010, by the hearing on the instant Motion, eight months have

passed without any payment, and Loveland has not taken any action.  The Court also notes that Loveland has allowed Aliah K. to attend even thought there are almost three years of outstanding expenses for her program.  Plaintiffs have not presented any evidence showing that there is an imminent change in Loveland's position regarding her enrollment.

Further, the Court also notes that, although there appeared to be a sense of urgency related to the TRO motions in August 2010, the same sense of urgency is not present in the instant Motion.  Plaintiffs filed the August 2010 TRO Motion on August 10, 2010 and, after Chief Judge Mollway's proceeding on August 25, 2010 in which she determined that the parties would move to reopen L.M., Plaintiffs filed the L.M. TRO Motion later that day.  In contrast, although Judge Kay found on September 9, 2010 that the parties should proceed in the instant case instead of in L.M., Plaintiffs did not file the instant Motion until six months later.[14]  This cuts against a finding of an actual and imminent threat.

The Court in no way minimizes the importance of Aliah K.'s education, and the Court is cognizant of the fact that

_____

[14] The Court emphasizes that it does not fault Plaintiffs for the passage of time between the filing of Parents of Loveland Academy, et al. v. Department of Education, CV 09-00306 DAE-LEK, on July 6, 2009 and Judge Kay's September 9, 2010 proceeding in L.M.  Plaintiffs had no control over the various reassignments of the case and the TRO motions.

Loveland has born the costs of Aliah K.'s education for almost three years now. It is clear that Loveland is acting solely in Aliah K.'s best interests, to its own substantial detriment and the Court is entirely loathe to hold Loveland's generosity against Plaintiffs. The fact remains that, as the party seeking the extraordinary relief of a preliminary injunction, Plaintiffs bear the burden of proving the required elements, including the imminent threat of irreparable harm. Loveland indicated in July 2010 that it would not permit Aliah K. to attend the school unless it received immediate payment of all outstanding amounts. Almost eight months later, Loveland still had not received any payments, but there has been no change in the circumstances surrounding Aliah K.'s enrollment.

Based on the existing record, Plaintiffs have established that Aliah K.'s exclusion from Loveland for non-payment is a possibility, but they have not established that there is an imminent threat of exclusion at this time.[15] The Court therefore FINDS that Plaintiffs have not established that Aliah K. is likely to suffer irreparable injury unless the Court grants the Motion.

---

[15] Plaintiffs could have established an actual and imminent threat by, for example, producing a declaration or a document from Loveland stating that it would exclude Aliah K. by a specific date if it did not receive payment.

## V.  **Public Interest**

The instant case presents unique circumstances, in particular, the extensive amount of time that will have elapsed between the remand of <u>L.M.</u> to the OAH and the eventual final determination of the case after appeal.  The parties' conduct in this case is also significant.  Neither party took any action to advance the remand on OAH's calendar.  Further, the public interest arguably supports both sides in this matter.  While the public has an interest in the provision of a FAPE to all students and in the integrity of the IDEA review process, that interest would not be served by a result that could, for example, encourage families to manipulate and abuse the process by intentionally prolonging proceedings so that they can receive stay put benefits in the interim.  The Court does not in any way suggest that is what Plaintiffs have done in the instant case, but it is cognizant that awarding Plaintiffs the preliminary relief that they seek based on the existing record would establish a rule that would be subject to manipulation and abuse.  The Court therefore FINDS that the public's interest is a neutral factor in this case.  This finding is WITHOUT PREJUDICE because the Court acknowledges that the circumstances surrounding Aliah K.'s enrollment may change.

## VI.  **Weight of All Factors**

Having considered the factors set forth in <u>Winter</u>, as

modified by <u>Alliance for the Wild Rockies</u>, the Court FINDS that Plaintiffs are not entitled to the requested preliminary injunction at this time. The Court makes no finding and expresses no opinion as to who will prevail on the ultimate issues in this case. This Court finds only that, at the present time, Plaintiffs are not entitled to the extraordinary remedy of a preliminary award of the relief that they ultimately seek in this case.

In addition, the Court emphasizes that it makes no findings and expresses no opinion as to whether Judge Kay is likely to rule that Plaintiffs are entitled to stay put when the remand is finally concluded and the proceedings in <u>L.M.</u> are reopened to consider the hearings officer's remand decision. Finally, as the court in <u>A.R.</u> did, this Court notes that:

> The Ninth Circuit has clearly held that, throughout court review proceedings, a school district is responsible for maintaining a placement that has been determined in an administrative decision to be appropriate until a court directs otherwise. <u>Clovis [v. California Office of Admin. Hrgs.]</u>, 903 F.2d [635,] 641 [(9th Cir. 1990)]. But <u>Clovis</u> does not address the present situation.

2011 WL 1230403, at *13. The instant case presents unique legal and factual issues that have not been fully addressed at this early stage of the case, precluding this Court from awarding preliminary relief at this time.

## **CONCLUSION**

45

On the basis of the foregoing, Plaintiffs' Motion for Temporary Restraining Order, which the Court also construes as a motion for preliminary injunction, filed March 17, 2011, is HEREBY DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII , April 21, 2011.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**ALIAH H, K., ET AL. V. STATE OF HAWAI`I, ET AL; CIVIL NO. 10-00447 LEK-KSC; ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION;**